# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRANCE ALLEN KING,<br><br>  Plaintiff,<br><br>  v.<br><br>ALLISON, *et al.*,<br><br>  Defendants. | Case No.  1:23-cv-00681-JLT-BAM (PC)<br><br>**FINDINGS AND RECOMMENDATIONS REGARDING DISMISSAL OF CERTAIN CLAIMS AND DEFENDANTS**<br><br>(ECF No. 20)<br><br>**FOURTEEN (14) DAY DEADLINE** |

Plaintiff Terrance Allen King ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff requested leave to amend, and the Court granted leave. The Court screened Plaintiff's first amended complaint, and Plaintiff was granted leave to amend. Plaintiff's second amended complaint is before the Court for screening. (ECF No. 20.)

**I.    Screening Requirement and Standard**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell*

1

1  *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as
2  true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*,
3  572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

4        To survive screening, Plaintiff's claims must be facially plausible, which requires
5  sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable
6  for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret*
7  *Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully
8  is not sufficient, and mere consistency with liability falls short of satisfying the plausibility
9  standard. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

10 **II.     Plaintiff's Allegations**

11       Plaintiff is currently housed at High Desert State Prison.  Plaintiff alleges that the events
12 in the complaint occurred while he was housed at California Correctional Institution in
13 Tehachapi, California.  Plaintiff names the following defendants: (1) Brian Cates, Warden, (2) R.
14 Hernandez, Associate Warden, (3) C. Bonffil, CC2, (4) E. Barthelemes, Captain, (5) R. Hunley,
15 Lieutenant, (6) K. Mumby, Sergeant, (7) Chelsea R. Patricio, Sergeant, (8) C. Bonilla, peace
16 officer, (9) T. Burns, peace officer, (10) J. Ramirez, peace officer, (11) G. Sanchez, peace officer,
17 (12) J. Serna, peace officer, (13) V. Chavez, CC1, (14) N. Welch, CC3, (15) Der-Hacopian,
18 psychiatrist.  Plaintiff alleges that defendants are being sued in both their individual and official
19 capacities.

20       In claim 1, Plaintiff alleges excessive force.  On 1/7/23, Plaintiff was housed at Tehachapi
21 on bravo yard, building 3, A section.  Defendant Burns was responding to an institutional alarm
22 and instructed Plaintiff to back up towards him.  Plaintiff complied.  Defendant Burns then placed
23 restraints on Plaintiff excessively tight.  Plaintiff asked Burns if he would loosen the restraints
24 because they were hurting.  Burns then tightened the restraints even more.  Plaintiff asked a second
25 time for Burns to loosen the restraints because they were hurting Plaintiff's writs.  Burns refused.

26       As Burns was escorting Plaintiff out of A section in Building 3, while in the rotunda,
27 Burns grabbed Plaintiff by his hair and violently slammed Plaintiff into the wall.  K. Mumby
28 aided Burns by grabbing Plaintiff neck and left shoulder, and they jointly slammed Plaintiff's face

1    and body into the wall three times violently.  Plaintiff repeatedly begged Burns and Mumby to
2    stop because they were hurting Plaintiff and dislocated Plaintiff's shoulder.  Burns grabbed the
3    shoulder and pulled it back and forth aggressively, while Mumby pinned Plaintiff to the wall.
4    Burns told Plaintiff to shut up or he would break off Plaintiff's arm.  Defendants J. Ramirez, G.
5    Sanchez, and C. Patricio stood by and watched the entire incident and did not attempt to prevent it
6    from happening.  Instead, they encouraged it by saying "slam him again," "do it again."
7             In claim 2, Plaintiff alleges a Due Process violation of the Fourteenth Amendment.
8    Plaintiff was taken to a classification hearing "I.C.C." on 1/12/23 without prior notice in violation
9    of CDCR procedure.  Plaintiff was denied witnesses with direct knowledge of the incident which
10   placed Plaintiff in Ad-seg, denied the right to give a statement (verbal or written), violating Due
11   Process by defendants J. Serna, N. Welch, C. Bonffil, V. Chavez, R. Hernandez, Der-Hacopian.
12   Plaintiff requested to call witnesses during the classification hearing but was denied.   Defendant
13   R. Hernandez said that the committee members J. Serna, N. Welch, C. Bonffil, V. Chavez, R.
14   Hernandez, Der-Hacopian will not call inmate witnesses because it would not make a difference.
15   Refusal to call witnesses with personal knowledge is denial of due process.
16            In claim 3, Plaintiff realleges that events on 1/7/23.  Plaintiff could hear and see defendant
17   J. Ramirez, G. Sanchez, and C. Patricio encourage the excessive force, "slam him again" "do it
18   again."  These officers failed to intervene or prevent the excessive force by Burns and Mumby.
19   Plaintiff suffered a dislocated shoulder, bruised collar bone, neck pain, headaches, and emotional
20   injury.
21            In claim 4, Plaintiff alleges a First Amendment violation.  On 1/7/23, Defendant C.
22   Bonilla and C. Patricio filed into "SOMS" and lodged false charged against Plaintiff that Plaintiff
23   had assaulted a fellow inmate with a weapon. R. Hunley also filed false charges and placed
24   Plaintiff in segregation based on the false charges.  Plaintiff spent 144 days in Ad-seg based on
25   false charges filed by Patricio, Bonilla, and Hunley.  This caused Plaintiff emotional distress and
26   defamed his character.  Defendant Barthelemes reviewed and approved the charges without any
27   evidence.
28            In claim 5, Plaintiff alleges a violation of the Civil Rights Bane Act.  Plaintiff was

3

threatened by Mumby and Patricio on 1/7/23 who said that "I'll take the cuff's off and kick your ass myself." Both Defendants Mumby and Patricio threatened Plaintiff and coerced Plaintiff to do something Plaintiff "was not legally obligated to do which was fabricate the fact that inmate Kwame Harrison attempted to assault me with a weapon." They threatened Plaintiff's safety by stating "if you 602 this, you can't be here at Tehachapi, we will make sure of it." And also said, "So take this RVR and ride out." This was a threat to Plaintiff's safety.

      In claim 6, Plaintiff alleges retaliation. On 1/19/23, in B yard, Building 8, C-Section Ad-Seg, cell 107, Plaintiff submitted a 602 grievance challenging the false charges. On 1/21/23, Mumby walked by Plaintiff cell, looked Plaintiff directly in and said "you fucking snitch, I told you not to 602 this. Watch what happens." On 1/23/23, the property officer in Ad-Seg "you've pissed someone off, cause your going to high desert." A few moments later, Plaintiff was transferred as retaliation for filing a 602. This has caused Plaintiff emotional distress.

      In claim 7, Plaintiff alleges a Due Process violation. On 2/6/23, Plaintiff submitted a 602 grievance and on 2/27/23, Plaintiff submitted another 602 grievance addressed specifically to Defendant B. Cates. Plaintiff alleged multiple violations that arose from a single incident on 1/7/23 that put Plaintiff in Ad-seg. Defendant Cates is liable for the due process violation by his failure to correct them on administrative appeal. He became responsible when he failed to correct them in the course of his supervisory responsibilities and affirmed Plaintiff's segregation placement and disciplinary charges. He had a duty to conduct at least a "minimal investigation" when confronted with evidence of due process violations on the 602 appeals processed on 2/6/23 and 2/27/23. Plaintiff sent confidential communications to Defendant Cates on 2/12/23 and 2/20/23 in which he failed to respond. Cates had a duty to conduct a "minimal investigation" and failed to do so upon receiving reports about the due process violations. The warden had a job to do and he did not do it. He knowingly failed to respond to an inmate's request for help sent via 602 grievances, CDCR Form 22, and confidential mail. Cates failed to respond to Plaintiff's request for help. Plaintiff suffered emotional and psychological pain and distress.

      In claim 8, Plaintiff alleges denial of right to medical care. On 1/7/23, Burns threatened Plaintiff with physical violence if Plaintiff asked for medical attention for the injuries Plaintiff

1 suffered as a result of being physically assaulted by both Burns and Mumby.  As they approached
2 medical, Burns said that if Plaintiff reported injuries, Burns and Mumby would resume the
3 beating.  Medical staff asked if Plaintiff needs any medical attention and Burns said, "no, he's just
4 fine, right?" and squeezed Plaintiff's injured dislocated arm to intimidate Plaintiff to agree.
5 Medical asked again if Plaintiff needed care, and Burns said "he does not need anything, he's
6 probably faking."  As they left, Plaintiff repeatedly asked Bruns to allow Plaintiff to see medical
7 and each time Burns said no.  Burns denied Plaintiff each time Plaintiff requested and Burns
8 stated "didn't I already fix your arm myself, or do you need more fixing?"  Plaintiff suffered
9 continued shoulder pain and aches and Plaintiff did not see medical for the shoulder injury until
10 he was transferred to a different institution.  At that new institution he was given Tylenol and
11 shots and physical therapy for 2 months.

As remedies, Plaintiff seeks compensatory and punitive damages.

**III. Discussion**

　　**A.　　Federal Rules of Civil Procedure 18 and 20**

Plaintiff may not bring unrelated claims against unrelated parties in a single action.  Fed. R. Civ. P. 18(a), 20(a)(2); *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *Mackey v. Price*, 2020 WL 7319420, at *3–4 (E.D. Cal. Dec. 11, 2020), report and recommendation adopted, 2021 WL 843462 (E.D. Cal. Mar. 5, 2021). Plaintiff may bring a claim against multiple defendants so long as (1) the claim arises out of the same transaction or occurrence, or series of transactions and occurrences, and (2) there are commons questions of law or fact.  Fed. R. Civ. P. 20(a)(2); *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997).  The "same transaction" requirement refers to similarity in the factual background of a claim.  *Id.* at 1349.  Only if the defendants are properly joined under Rule 20(a) will the Court review the other claims to determine if they may be joined under Rule 18(a), which permits the joinder of multiple claims against the same party.

As Plaintiff was informed in the Court's screening order, Plaintiff may not raise different claims against different defendants in a single action. For instance, Plaintiff may not state unrelated claims for his Ad-Seg housing, excessive force, appeals processing, false reports,

medical care, retaliation, and many other claims. Unrelated claims involving multiple defendants belong in different suits. The complaint is a series of multiple different incidents which happened after Plaintiff was handcuffed. As Plaintiff was informed, if unrelated claims are joined, the Court will select which cognizable claim may proceed. Separate unrelated claims must be filed in separate lawsuits. The Court declines to expend its scarce resources screening improperly joined claims.

**B.      Official Capacity**

Plaintiff is attempting to sue defendants for monetary damages in their official and individual capacities. "Suits against state officials in their official capacity . . . should be treated as suits against the State." *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Holley v. Cal. Dep't of Corr.*, 599 F.3d 1108, 1111 (9th Cir. 2010) (treating prisoner's suit against state officials in their official capacities as a suit against the state of California). An official capacity suit "represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citation omitted). Such a suit "is not a suit against the official personally, for the real party in interest is the entity." *Id.* at 166 (emphasis in original). Plaintiff cannot sue the Defendants in their official capacities.

**C. Supervisory Liability**

To the extent Plaintiff seeks to hold any defendant liable based solely upon their supervisory role, he may not do so. Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676–77; *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1020–21 (9th Cir. 2010); *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (citation and quotation marks omitted); *accord Lemire v. Cal. Dep't of Corrs. & Rehab.*, 726 F.3d 1062, 1074–75 (9th Cir. 2013); *Lacey v. Maricopa Cty.*, 693 F.3d 896, 915–16 (9th Cir. 2012) (en banc). "Under the latter theory, supervisory liability exists even without overt

personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation." *Crowley*, 734 F.3d at 977 (citing *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)) (internal quotation marks omitted).

Plaintiff names supervisory defendants. In particular, Plaintiff alleges that Warden Cates did not do his job in response to 602s, forms and communications. Plaintiff merely relies on this supervising Defendants' responsibilities to ensure the safety and health of the prisoners, but this claim is based on respondeat superior which is not cognizable under section 1983. *Iqbal*, 556 U.S. at 677. Such conclusory allegations are insufficient to state the causal link between such defendant and the claimed constitutional violation.

### D. Failure to Investigate

Plaintiff alleges the defendants did not adequately investigate the false charges or his 602 grievances and other notices of violations.

To the extent Plaintiff alleges any defendant, violated his rights for an inadequate investigation, Plaintiff's claims are not a basis for a plausible §1983 claim. *Baker v. Beam*, 2019 WL 1455321, at *6 (E.D. Cal. 2019); *Drake v. Ibal*, No. 1:22-CV-01149 BAM PC, 2022 WL 18027808, at *8 (E.D. Cal. Dec. 30, 2022) (no claim for faulty investigation for removal of evidence from the investigative file). To the degree Plaintiff is trying to hold the individuals or others liable for an independent, unspecified constitutional violation based upon an allegedly inadequate investigation, there is no such claim. *See Gomez v. Whitney*, 757 F.2d 1005, 1006 (9th Cir. 1985) (per curiam) ("[W]e can find no instance where the courts have recognized inadequate investigation as sufficient to state a civil rights claim unless there was another recognized constitutional right involved."); *Page v. Stanley*, 2013 WL 2456798, at *8–9 (C.D. Cal. June 5, 2013) (dismissing Section 1983 claim alleging that officers failed to conduct thorough investigation of plaintiff's complaints because plaintiff "had no constitutional right to any investigation of his citizen's complaint, much less a 'thorough' investigation or a particular outcome"); *Tirado v. Santiago*, No. 1:22-CV-00724 BAM PC, 2022 WL 4586294, at *5 (E.D. Cal. Sept. 29, 2022), report and recommendation adopted, No. 1:22-CV-00724 JLT BAM PC,

1  2022 WL 16748838 (E.D. Cal. Nov. 7, 2022) (no constitutional claim for failing to investigate an
2  appeal).

3        **E.**      **False Rules Violation Report**

4      It appears Plaintiff alleges a Due Process violation for being falsely accused of improper
5  conduct.

6      Prisoners do not have a liberty interest in being free from false accusations of misconduct.
7  The filing of a false Rules Violation Report by a prison official against a prisoner is not a per se
8  violation of the prisoner's constitutional rights. *See Muhammad v. Rubia*, 2010 WL 1260425, at
9  *3 (N.D. Cal., Mar. 29, 2010), aff'd, 453 Fed. App'x 751 (9th Cir. 2011) ("[A] prisoner has no
10 constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which
11 may result in the deprivation of a protected liberty interest. As long as a prisoner is afforded
12 procedural due process in the disciplinary hearing, allegations of a fabricated charge fail to state a
13 claim under § 1983.") (citations omitted)

14     The creation of false evidence, standing alone, is not actionable under § 1983. See
15 *Hernandez v. Johnston*, 833 F.2d 1316, 1319 (9th Cir. 1987) (independent right to accurate prison
16 record has not been recognized); *Johnson v. Felker*, No. 1:12–cv–02719 GEB KJN (PC), 2013
17 WL 6243280, at *6 (E.D. Cal. Dec. 3, 2013) ("Prisoners have no constitutionally guaranteed right
18 to be free from false accusations of misconduct, so the mere falsification of a report does not give
19 rise to a claim under section 1983.") (citations omitted). Moreover, "plaintiff cannot state a
20 cognizable Eighth Amendment violation based on an allegation that defendant[ ] issued a false
21 rule violation against plaintiff." *Jones v. Prater*, No. 2:10-cv-01381 JAM KJN P, 2012 WL
22 1979225, at *2 (E.D. Cal. Jun. 1, 2012); *see also Youngs v. Barretto*, No. 2:16-cv-0276 JAM AC
23 P, 2018 WL 2198707, at *3 (E.D. Cal. May 14, 2019) (noting that issuance of false rules violation
24 report does not rise to the level of cruel and unusual punishment) (citations omitted).

25     This claim is improperly joined.

26       **F. Eighth Amendment**

27           **1.**   **Excessive Force**

28     The Eighth Amendment protects prisoners from inhumane methods of punishment and

from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. *Hudson v McMillian*, 503 U.S. 1, 5 (1992) (citations omitted). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (quotations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is...whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. Not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* at 9. De minimis uses of physical force do not violate the constitution provided that the use of force is not of a sort "repugnant to the conscience of mankind." *Whitley v. Albers*, 475 U.S. 312, 327 (1986) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

For claims of excessive physical force, the issue is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Relevant factors for this consideration include "the extent of injury... [,] the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.' " *Id.* (quoting *Whitley v. Albers*, 475 U.S. 1078, 1085 (1986) ). Finally, because the use of force relates to the prison's legitimate penological interest in maintaining security and order, the court must be deferential to the conduct of prison officials. *See Whitley*, 475 U.S. at 321–22.

Plaintiff states a cognizable excessive for claim, claim 1, against Defendant Burns for the painful cuffing and refusal to loosen the cuffs on 1/7/23.  Plaintiff states a cognizable claim against Defendant Burns and Mumby for the force used against Plaintiff on 1/7/23 in the rotunda.

2. **Deliberate Indifference to Medical Care**

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment in violation of the Eighth Amendment unless the mistreatment rises to the level of

"deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The two-part test for deliberate indifference requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,' " and (2) "the defendant's response to the need was deliberately indifferent." *Jett*, 439 F.3d at 1096. A defendant does not act in a deliberately indifferent manner unless the defendant "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a high legal standard," *Simmons v. Navajo County, Ariz*, 609 F.3d 1011, 1019 (9th Cir. 2010); *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm. *Jett*, 439 F.3d at 1096.

Negligence or medical malpractice do not rise to the level of deliberate indifference. *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105-106). "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106; *see also Anderson v. County of Kern*, 45 F.3d 1310, 1316 (9th Cir. 1995). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990). Additionally, a prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

Further, a "difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012) (citing *Sanchez v. Vild*, 891 F.2d at 242, overruled in part on other grounds, *Peralta v. Dillard*, 744 F.3d 1076, 1082–83 (9th Cir. 2014); *Wilhelm v. Rotman*, 680 F.3d 1113, 1122–23 (9th Cir. 2012)) (citing *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1986)). Rather, Plaintiff "must show that the

course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." *Snow*, 681 F.3d at 988 (citing *Jackson*, 90 F.3d at 332) (internal quotation marks omitted).

Plaintiff states a cognizable claim, claim 8, for deliberate indifference to medical care against Defendant Burns for the events on 1/7/23. Plaintiff does not state a cognizable claim against any other defendant because Plaintiff fails to include any facts that he was denied or delayed medical care by any other person. Plaintiff has been unable to cure this deficiency.

### 3. **Failure to Protect**

Prison officials have a duty under the Eighth Amendment to protect prisoners from violence at the hands of other prisoners or others because being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society. *Farmer*, 511 U.S. at 833; *Clem v. Lomeli*, 566 F.3d 1177, 1181 (9th Cir.2009); *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005). However, prison officials are liable under the Eighth Amendment only if they demonstrate deliberate indifference to conditions posing a substantial risk of serious harm to an inmate; and it is well settled that deliberate indifference occurs when an official acted or failed to act despite his knowledge of a substantial risk of serious harm. *Farmer*, 511 U.S. at 834, 841; *Clem*, 566 F.3d at 1181; *Hearns*, 413 F.3d at 1040.

Liberally construing the allegations, Plaintiff states a cognizable claim, claim 3, against Defendants J. Ramirez, G. Sanchez, and C. Patricio for failure to protect.

### G. Due Process

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. *Hewitt v. Helms*, 459 U.S. 460, 466 (1983).

A prisoner does not have a right to a particular classification or custody level under the Due Process Clause. *See Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007) (concluding California prisoner does not have liberty interest in residing at a level III prison as opposed to

11

1  level IV prison). Prisoners do not have a liberty interest in remaining housed in the general
2  prison population. *Hernandez v. Constable*, 2020 WL 2145387, at *2 (E.D. Cal. Feb. 21, 2020),
3  report and recommendation adopted, 2020 WL 2126893 (E.D. Cal. May 5, 2020) (citing *Smith v*
4  *Noonan*, 992 F.3d 987, 989 (9th Cir. 1993); *McFarland v. Cassady*, 779 F.2d 1426, (9th Cir.
5  1986)). Accordingly, Plaintiff does not have a liberty interest in being housed in any particular
6  prison or to any particular classification.

7  "Typically, administrative segregation in and of itself does not implicate a protected
8  liberty interest." *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003); *see also Sandin v.*
9  *Connor*, 515 U.S. at 472, 486 (discipline in segregated confinement did not present the type of
10 atypical, significant deprivation in which a State might conceivably create a liberty interest.)
11 "[W]hen prison officials initially determine whether a prisoner is to be segregated for
12 administrative reasons due process only requires the following procedures: Prison officials must
13 hold an informal nonadversary hearing within a reasonable time after the prisoner is segregated.
14 The prison officials must inform the prisoner of the charges against the prisoner or their reasons
15 for considering segregation. Prison officials must allow the prisoner to present his views."
16 *Toussaint v. McCarthy*, 801 F.2d 1080, 1100-01 (9th Cir. 1986) (footnote omitted), abrogated on
17 other grounds, *Sandin*, 515 U.S. 472. For an administrative decision, due process requires that
18 prison officials hold an informal non-adversary hearing within a reasonable time after the prisoner
19 is segregated, inform the prisoner of the reason segregation is being considered, and allow the
20 prisoner to present his views. *Toussaint*, 801 F.2d at 1100, 1104-05.

21 This claim against different defendants is improperly joined with claims for conduct on
22 1/7/23 of excessive force, failure to protect, and deliberate indifference to medical care. In
23 addition, the claim against Warden Cates for violation of Due Process is improperly joined.

24 **H. Processing of Appeals**

25 To the extent Plaintiff is complaining about the appeal process, Plaintiff is informed that
26 he does not have a constitutionally protected right to have his appeals accepted or processed.
27 *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th
28 Cir. 1988). The prison grievance procedure does not confer any substantive rights upon inmates

and actions in reviewing appeals cannot serve as a basis for liability under section 1983. *See also Givens v. Cal. Dep't of Corrs. & Rehab.*, No. 2:19-cv-0017 KJN P, 2019 WL 1438068, at *4 (E.D. Cal. Apr. 1, 2019) ("California's regulations grant prisoners a purely procedural right: the right to have a prison appeal.") Therefore, prison officials are not required by federal law to process inmate appeals or grievances in a particular way. Consequently, the failure or refusal to process a grievance or the denial, rejection, or cancellation of a grievance does not violate any constitutionally protected right. *See Rushdan v. Gear*, No. 1:16-cv-01017-BAM (PC), 2018 WL 2229259, at *6 (E.D. Cal. May 16, 2018); *Givens*, 2019 WL 1438068, at *4; *Wright v. Shannon*, No. 1:05-cv-01485-LJO-YNP PC, 2010 WL 445203, at *5 (E.D. Cal. Feb. 2, 2010) (plaintiff's allegations that prison officials denied or ignored his inmate appeals failed to state a cognizable claim under the First Amendment); *Valles v. Gamboa*, No. 1:22-CV-00355 BAM PC, 2022 WL 1294424, at *3–4 (E.D. Cal. Apr. 29, 2022) (no claim for failure to comply with timely processing requirements).

## I. Verbal Harassment

Plaintiff fails to state a cognizable claim for threats. Allegations of name-calling, verbal abuse, or threats generally fail to state a constitutional claim under the Eighth Amendment, which prohibits cruel and unusual punishment. *See Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996) ("[V]erbal harassment generally does not violate the Eighth Amendment."), opinion amended on denial of reh'g, 135 F.3d 1318 (9th Cir. 1998); *see also Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987) (holding that a prisoner's allegations of threats allegedly made by guards failed to state a cause of action). Even in cases concerning "abusive language directed at [a plaintiff's] religious and ethnic background, 'verbal harassment or abuse is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983.'" *Freeman v. Arpaio*, 125 F.3d 732, 738 (9th Cir. 1997) (quoting *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987)) (alterations omitted), abrogated on other grounds by *Shakur v. Schriro*, 514 F.3d 878 (9th Cir. 2008). However, verbal harassment may violate the constitution when it is "unusually gross even for a prison setting and [is] calculated to and [does] cause [plaintiff] psychological damage." *Cox v. Kernan*, 2019 WL 6840136, at *5 (E.D. Cal. Dec. 16, 2019) (alterations in original) (quoting Keenan, 83 F.3d 1083

at 1092). The factual allegations do not support a claim.  Plaintiff has been unable to cure this deficiency.

### J. First Amendment - Retaliation

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009)). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005). "[T]he mere threat of harm can be an adverse action...." *Brodheim*, 584 F.3d at 1270. A plaintiff must plead facts showing that their "protected conduct was the substantial or motivating factor behind the defendant's conduct." *Id.* at 1271. To state a cognizable retaliation claim, Plaintiff must establish a nexus between the retaliatory act and the protected activity. *Grenning v. Klemme*, 34 F. Supp. 3d 1144, 1153 (E.D. Wash. 2014).

This claim, claim 7, is improperly joined with claims for conduct on 1/7/23 of excessive force, failure to protect, and deliberate indifference to medical care.  Even if properly joined, Plaintiff fails to state a claim against Defendant Mumby.  Plaintiff fails to allege factual support that Mumby had the authority to authorize Plaintiff's transfer and had Plaintiff transferred for filing a grievance, that such conduct chilled Plaintiff's exercise of his rights, and the action did not reasonably advance a legitimate correctional goal.  Plaintiff has been unable to cure this deficiency.

### K. State Law Claims

To the extent Plaintiff also alleges violations of California law, Plaintiff is informed that the California Government Claims Act requires that a tort claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board no more than six months after the cause of action accrues.  Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2.  Presentation of a written claim, and action on or rejection of the claim are

conditions precedent to suit. *State v. Superior Court of Kings County (Bodde),* 32 Cal.4th 1234, 1239 (Cal. 2004); *Shirk v. Vista Unified School District*, 42 Cal.4th 201, 209 (2007).  To state a tort claim against a public employee, a plaintiff must allege compliance with the California Tort Claims Act. Cal. Gov't Code § 950.6; *Bodde*, 32 Cal.4th at 1244.  "[F]ailure to allege facts demonstrating or excusing compliance with the requirement subjects a compliant to general demurrer for failure to state a cause of action." *Bodde*, 32 Cal.4th at 1239.

As Plaintiff has not alleged compliance with the Government Claims Act, he has failed to state a claim under California law.  Plaintiff has been unable to cure this deficiency.

**IV.    Conclusion and Recommendation**

Based on the above, the Court finds that Plaintiff states cognizable Eighth Amendment claims against: (1) Defendant Burns for the painful cuffing and refusal to loosen the cuffs on 1/7/23, (2) Defendants Burns and Mumby for the force used against Plaintiff on 1/7/23 in the rotunda,  (3) Defendant Burns for deliberate indifference to medical care for the events on 1/7/23, and (4) Defendants J. Ramirez, G. Sanchez, and C. Patricio for failure to protect for the events on 1/7/23.

Despite being provided with the relevant pleading and legal standards, Plaintiff has been unable to cure the identified deficiencies and further leave to amend is not warranted. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

It is HEREBY RECOMMENDED that:

1. This action proceed on Plaintiff's second amended complaint, filed August 28, 2023 (ECF No. 20), for Eighth Amendment claims against: (1) Defendant Burns for the painful cuffing and refusal to loosen the cuffs on 1/7/23, (2) Defendants Burns and Mumby for the force used against Plaintiff on 1/7/23 in the rotunda,  (3) Defendant Burns for deliberate indifference to medical care on 1/7/23, and (4) Defendants J. Ramirez, G. Sanchez, and C. Patricio for failure to protect on 1/7/23.
2. All other claims and any other defendants be dismissed based on Plaintiff's failure to state claims upon which relief may be granted.

* * *

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that the failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:     **September 12, 2023**         /s/ Barbara A. McAuliffe          _
                                        UNITED STATES MAGISTRATE JUDGE

16